HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

FRANCISCO RUBIO-PEREZ,

Defendant.

Case No. CR07-5368RBL

ORDER

THIS MATTER is before the Court on Defendant Rubio-Perez's Motion to Suppress and Motions in Limine [Dkt. #24]. The defendant seeks to suppress evidence found in the Acura in which he was riding, seeks to exclude evidence of phone conversations between the defendant and cooperating defendant Tapia-Martinez, seeks the disclosure of the identity of confidential informants used in a related case, and seeks copies of Pretrial Services Reports of two defendants in a related case. The Court has considered the motion and opposition thereto, and now finds and rules as follows:

I.    **FACTS**[1]

On March 14, 2007, officers from the Grays Harbor Drug Task Force ("GHDTF") and agents from the Drug Enforcement Administration ("DEA") executed a state search warrant at the Hoquiam, Washington residence of Roberto Tapia-Martinez and Gustavo Orosco-Romero. The officers seized guns and drugs and arrested Tapia-Martinez and Orosco-Romero.

---

[1]The defendant does not challenge the basic facts. He has not requested an evidentiary hearing.

Tapia-Martinez elected to cooperate with the officers. He admitted his and Orosco-Romero's drug dealing activities and indicated that one of his sources for methamphetamine was a man from Pasco, Washington he knew only as "Primo." He agreed to contact Primo and to try to arrange a controlled delivery of drugs. He placed several phone calls to Primo on March 14th and 15th. They were placed to a cellular phone and also were conducted using Nextel direct connect, a walkie-talkie type system. The conversations were in Spanish. The calls were monitored by the officers, including DEA SA Errin Jewell and Immigration and Customs Enforcement ("ICE") SA Paul Cervantes. Agent Jewell understands Spanish and Agent Cervantes speaks the language fluently.

Tapia-Martinez, with the agents listening, requested five pounds of methamphetamine from Primo. Negotiations ensued ultimately culminating in Primo agreeing to deliver three pounds with the other two pounds coming later from another of Primo's suppliers in Aberdeen. Primo told Tapia-Martinez that he would meet him at a Jack in the Box restaurant in Tumwater and that he would have another person with him.

At approximately 7:10 p.m. on the 15th, the agents set up surveillance in the restaurant's parking lot. Tapia-Martinez was told to wait in his vehicle in the parking lot, and when the drugs arrived, to open the rear cargo hatch of his car. Shortly thereafter, agents observed a black Acura with California license plates and two Hispanic males inside pull into the parking lot and park next to Tapia-Martinez. The passenger (identified as the defendant, Rubio-Perez) exited his vehicle and spoke to Tapia-Martinez. The two were joined by the driver, later identified as Jose Pilar Perez-Pacheco,[2] and all three stood by the rear of the Acura. Once all three were together, Tapia-Martinez opened the rear hatch of his vehicle and the agents moved in and arrested Rubio-Perez and Perez-Pacheco.

In Rubio-Perez's pocket, the agents found a Nextel phone with the direct connect number that Tapia-Martinez had been calling to arrange the drug deal. Tapia-Martinez identified Rubio-Perez as Primo.

The task force officers searched the Acura. In the center console of the vehicle officers found the cellular phone with the number Tapia-Martinez had called to contact Primo on the 14th. Officers also discovered that the interior side panels in the rear of the Acura were slightly ajar. A Washington State Patrol drug-sniffing dog was brought in and the K-9 alerted to the side panels. Officer Pigman used a screwdriver

---

[2]Perez-Pacheco was originally named in the complaint filed against all the defendants (MJ07-5050); however, the government dismissed the charges against Perez-Pacheco and he has been deported.

1   to pry open the panels and discovered a hidden compartment in each side panel measuring approximately

2   8"x2"x2".  In the driver's side compartment the officer found five separate zip-loc bags containing a total of

3   2061.2 gross grams of crystal methamphetamine.  The passenger side compartment was empty.  A search of

4   the trunk revealed an opened box of dryer freshener sheets and a five pound container of MSM.

5       Rubio-Perez was initially indicted with Tapia-Martinez, Orosco-Romero, and Arreola-Guiterrez and

6   charged with conspiracy to distribute methamphetamine.  (CR07-5258).  The government thereafter filed a

7   superseding indictment naming only Tapia-Martinez, Orosco-Romero, and Arreola-Guiterrez, and filed a

8   separate indictment charging only Rubio-Perez.  In the instant case Rubio-Perez is charged with conspiracy

9   to distribute, and possession with the intent to distribute, methamphetamine.

10  **II.    DISCUSSION.**

11      **A.    Motion to Suppress.**

12      The defendant seeks to suppress the drugs found in the hidden rear compartment and the dryer sheets

13  and MSM found in the trunk.  He argues that the search violated the Fourth Amendment because the search

14  exceeded the permissible scope of a warrantless search of an automobile incident to arrest.  In support of his

15  position, the defendant relies on *New York v. Belton*, 453 U.S. 454 (1981) and *United States v. Mayo*, 394 F.3d

16  1271 (9th Cir. 2004).  *Belton* held that officers may search a vehicle, its passenger compartments, and the

17  containers therein as a contemporaneous search incident to arrest.  453 U.S., at 460.  *Mayo* extended the rule

18  to the covered or uncovered hatchback area of a vehicle.  394 F.3d, at 1277-78.

19      If, however, the officers have probable cause to believe that the vehicle contains evidence of a crime,

20  the officers may lawfully conduct a warrantless search of the entire vehicle and its contents.  *United States v.*

21  *Ross*, 456 U.S. 798, 825 (1982).  This rule is known as the "automobile exception" to the warrant requirement.

22  *United States v. Pinela-Hernandez*, 262 F.3d 974, 978 (9th Cir. 2001), *cert. denied*, 535 U.S. 1120 (2002).

23      An officer has probable cause to search if, in the totality of the circumstances, "there is a fair probability

24  that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213,

25  238 (1983).  Here, based on the monitored phone calls between Tapia-Martinez and Primo and the surveillance

26  of the restaurant, the officers clearly had probable cause to believe that the Acura contained drugs.  Therefore,

27  the warrantless search of the entire vehicle did not violate the Fourth Amendment.  *See United States v. Hatley*,

28  15 F.3d 856, 858 (9th Cir. 1994).  The defendant's motion to suppress is **DENIED**.

**B.      Motion to Exclude Phone Conversations.**

The defendant seeks to prevent the government's agents from testifying as to the content of the phone conversations on two grounds: (1) the statements are hearsay; and (2) that a sufficient foundation cannot be established that Rubio-Perez is the speaker on the other end of the calls.

The statements made by Rubio-Perez are not hearsay but are admissions against interest. Fed. R. Evid. 801(d)(2).  They are admissible.  Likewise, the statements made by Tapia-Martinez also are not hearsay because they are not offered for the truth of the matter asserted, Fed. R. Evid. 802(c), and are relevant to provide the context for the defendant's statements. *See United States v. Whitman*, 771 F.2d 1348, 1352 (9th Cir. 1985).

The government posits that it will be able to establish that Agent Jewell interviewed the defendant subsequent to his arrest and can identify the defendant's voice.  Tapia-Martinez may also testify and identify Rubio Perez as Primo.  This evidence, if presented, together with the other evidence already discussed, is sufficient to lay a foundation for the admissibility of the monitored conversations.  The defendant, however, shall not be precluded from testing, through voir dire or cross-examination, the basis of knowledge of either Agent Jewell or Tapia-Martinez in order to challenge the evidence's foundation.

**C.      Disclosure of the Confidential Informants.**

The defendant seeks the disclosure of the two informants used in the investigation of Arreola-Guiterrez and Tapia-Martinez.  According to the government, Tapia-Martinez on behalf of Arreola-Guiterrez, threatened one of the informants.  This threat led to the investigation and subsequent arrest of Tapia-Martinez and Orosco-Ramirez.  The government indicates that the informants did not know Rubio-Perez, did not provide information about him, nor will they testify at trial.  One informant has been deported and is not in contact with the government.

Rubio-Perez is only entitled to the disclosure of the informants' identities where it would be relevant and helpful to the defense or essential to a fair determination of the cause. *Rovario v. United States*, 358 U.S. 53, 60-61 (1957).  The government has an interest in protecting the identity of its informants. *United States v. Gill*, 58 F.3d 1414, 1421 (9th Cir.), *cert. denied*, 516 U.S. 969 (1995).  The defendant bears the burden of demonstrating the need for disclosure. *United States v. Williams*, 898 F.2d 1400, 1402 (9th Cir. 1990).  In deciding whether to order the disclosure of an informant's identity, the Court should weigh, *inter alia*, "how

1  helpful the informant's testimony would be to the defendant." *Gill*, 58 F.3d, at 1421.

2      Tapia-Martinez has admitted the evidence Rubio-Perez seeks to obtain through disclosure of the

3  informants.  He has admitted threatening one of the informants on behalf of Arreola-Guiterrez, and he has also

4  admitted that he has multiple sources of drugs.  Therefore, because the defendant has not met his burden to

5  demonstrate that disclosure would be helpful to his defense, he has not overcome the government's interest

6  in non-disclosure.  The defendant's motion to disclose confidential informants is **DENIED**.

7      **D.      Motion to Disclose Tapia-Martinez and Perez-Pacheco's Pretrial Services Reports.**

8      The Court will review these reports to determine whether they contain *Brady* material.

9      Defendant's Motion to Suppress and Motions in Limine [Dkt. #24] are **DENIED**.

10     **IT IS SO ORDERED.**

11     Dated this 5th day of November, 2007.

12

13

      RONALD B. LEIGHTON
14     UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER
Page - 5